AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
District of Oregon

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.   3:21-mj-197 |
| ▩▩▩▩▩▩▩▩▩▩ and | ) | |
| JAIRO HASSIEL IBARRA HERNANDEZ, | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _October 2020 to October 12, 2021_ in the county of _Multnomah_ in the

District of _Oregon and elsewhere_, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 843(b), 856(a) and 846 | Conspriracy to possess with intent to distribute and distribute controlled substances, to use a communication facility and maintain drug-involved premises |
| | (Continued on attached Supplement to Complaint Offense Description) |

This criminal complaint is based on these facts:

See the attached affidavit of DEA Special Agent Brad Dixon

☑ Continued on the attached sheet.

/s/ Signed by telephone
*Complainant's signature*

Brad Dixon, DEA Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 8:18 p.m.

Date:   10/12/2021

*Youlee Yim You*
*Judge's signature*

City and state:         Portland, Oregon

YOULEE YIM YOU, U.S. Magistrate Judge
*Printed name and title*

**UNITED STATES**

**v.**

████████████████████████

**JAIRO HASSIEL IBARRA HERNANDEZ**

<u>**COUNT 1**</u>
**(Conspiracy to Possess with Intent to Distribute and Distribute Controlled Substances, to Use a Communication Facility and to Maintain Drug-Involved Premises)**
**(21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(i), 843(b), 856(a) and 846)**

Beginning on an unknown date but no later than on or before the month of October 2020, and continuing until an unknown date but ending no earlier than the date of this complaint, in the District of Oregon and elsewhere, defendants ████████████████████████

**and JAIRO HASSIEL IBARRA HERNANDEZ** did knowingly and intentionally combine, conspire,confederate, and agree with each other and other persons whose identities are known and unknown to commit the following objects in violation of Title 21, United States Code, Section 846:

<u>**Objects of the Conspiracy**</u>

**A.**    <u>**Possession with Intent to Distribute Methamphetamine**</u>: The conspirators agreed to possess with intent to distribute 50 grams of actual methamphetamine its salts, isomers, or salts of its isomers, and 500 grams or more of a mixture or substance containing a detectible amount of methamphetamine, its salts, isomers, or salts of its isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(i).

**B.**    <u>**Distribution of Methamphetamine:**</u> The conspirators agreed to distribute 50 grams of actual methamphetamine, its salts, isomers, or salts of its isomers, and 500 grams or more of a mixture or substance containing a detectible amount of methamphetamine, its salts,

**Supplement to Complaint Offense Description**                                            **Page 1**

isomers, or salts of its isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii).

   C.   **Possession with Intent to Distribute Heroin**: The conspirators agreed to possess with intent to distribute 100 grams or more of a mixture or substance containing a detectible amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B)(i).

   D.   **Possession with Intent to Distribute Fentanyl**: The conspirators agreed to possess with intent to distribute a mixture or substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide), a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B)(vi).

   E.   **Use of a Communication Facility**:  The conspirators agreed to use communication facilities, including cellular telephones, in committing, causing, or facilitating the commission of a controlled substance felony under Subchapter I of Title 21 of the United States Code, in violation of Title 21, United States Code, Section 843(b).

   F.   **Maintaining Drug-Involved Premises**: The conspirators agreed to open, lease, rent, use and maintain facilities for the purpose of distributing heroin, a Schedule I controlled substance, and methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 856(a).

**Manner and Means**

   The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

   It was part of this conspiracy for certain of the defendants and others to store, transport, and conceal controlled substances.

It was part of this conspiracy for certain of the defendants and others to utilize cellular telephones to further the possession and distribution of controlled substances, and to use coded language to communicate with each other in the course of the conspiracy.

It was part of this conspiracy for certain of the defendants and others to process, store,weigh, and package controlled substances for distribution.

It was part of this conspiracy for certain of the defendants and others to maintain premises for the purposes of storing, packaging, possessing, and distributing controlled substances.

It was part of this conspiracy to use and maintain motor vehicles to transport controlled substances, money, and co-conspirators, to facilitate drug transactions, and to employ counter-surveillance methods while driving or during the conduct of transactions, in the course of possessing with intent to distribute and distributing controlled substances and transporting drug proceeds.

It was part of this conspiracy to register vehicles, rent real property and subscribe to utilities in names that would avoid detection by law enforcement.

It was part of this conspiracy to provide physical locations for conspirators to store, process and organize the distribution of controlled substances.

It was part of this conspiracy to smuggle money across state and international borders to facilitate drug transactions and payment for controlled substances.

In furtherance of this conspiracy, and to effect and accomplish its objectives, the defendants and other co-conspirators committed one or more of the following overt acts:

### Overt Acts

In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the District of Oregon and elsewhere:

**Supplement to Complaint Offense Description**                                    **Page 3**

1.      On or about March 30, 2021, ████████████████████

**JAIRO HASSIEL IBARRA HERNANDEZ** and others coordinated the delivery of,

transported, and delivered heroin, and cocaine, Schedule I controlled substance, from California

to the Portland, Oregon area using cell phone communication facilities whereupon the drugs

were stored in premises for further sub-distribution

2.      Beginning in April, 2021, ████████████████████ **JAIRO**

**HASSIEL IBARRA HERNANDEZ** and others coordinated the delivery of approximately 50

gross grams or more ofactual methamphetamine, its salts, isomers, or salts of its isomers, a

Schedule II controlled substance from California to the Portland Oregon area using cell phone

communication facilities, whereupon the drugs were stored at a premises for further sub-

distribution.

3.      On or about May 7, 2021, ████████████████████ **JAIRO**

**HASSIEL IBARRA HERNANDEZ** and others coordinated the delivery of, transported, and

delivered cash proceeds from the sale of illegal controlled substances from the Portland Oregon

area to other members of the conspiracy.

4.      On or about August 6, 2021, ████████████████ and others

coordinated the delivery of, transported, and delivered approximately 1,419.4 gross grams or

more of heroin, a Schedule I controlled substance from California to the Portland Oregon area.

In violation of Title 21, United States Code Sections 841(a)(1), 841(b)(1)(B)(i), 843(b),

856(a) and 846.

DISTRICT OF OREGON, ss:                AFFIDAVIT OF BRADLEY A. DIXON


**Affidavit in Support of a Criminal Complaint and Arrest Warrant**


I, Bradley A. Dixon, being duly sworn, do hereby depose and state as follows:

## Introduction and Agent Background

1.      I have been employed as a Special Agent by the Drug Enforcement

Administration (DEA) since February of 2017.  My current assignment is at the Portland District

Office where I am assigned to a DEA Federal Task Force Group.  My formal law enforcement

training includes successfully completing the 18-week DEA basic training course at the DEA

academy in Quantico, Virginia.  Since then, I have participated in dozens of drug investigations

involving controlled purchase operations, vehicle tracking, cell phone geo-location techniques,

cell-site simulators, pen register/trap and trace orders, and Title III wiretaps.  I have interviewed

and operated informants, executed search warrants, arrested and interviewed subjects, conducted

physical surveillance, and utilized electronic and video surveillance.  I have also worked with

and consulted numerous agents and law enforcement officers who have investigated drug

trafficking.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for:

- ███████████████████████████

- Jairo Hassiel Ibarra Hernandez ("Ibarra")

for Conspiracy to Possess with Intent to Distribute and to Distribute Controlled Substances, to

Maintain a Drug-Involved Premises, and to Use a Communication Facility in furtherance of the

above offenses, all in violation of 21 U.S.C. Sections 841(a)(1), 846, 856(a), and 843(b)

(hereinafter the "Target Offenses").

## Applicable Law

3.       Title 21, United States Code, Sections 841(a)(1), 846, 856(a), and 843(b) make it

illegal to possess or conspire to possess controlled substances with the intent to distribute them,

to maintain a drug-involved premises, and to use a communication facility in furtherance of these

offenses.

## Sources of Information

4.       I have obtained some facts set forth in this Affidavit from an interview of a

recently arrested defendant of this investigation (hereinafter the "Arrested Defendant-1" or "AD-

1").

5.       I have obtained some facts set forth in this Affidavit from an interview of another

recently arrested defendant of this investigation (hereinafter the "Arrested Defendant-2" or "AD-

2").

## Statement of Probable Cause

### *Background of the Investigation*

6.       In October 2020, Investigators began investigating a Drug Trafficking

Organization (DTO) suspected of importing methamphetamine and heroin from Mexico into

California, then destined for distribution in Oregon and Washington. Thus far in the

investigation, over 30 people have been federally indicted or charged via complaint and are

pending indictment, 30 people have been arrested, and 14 guns have been seized. Investigators

have seized over 39.7 gross kilograms of methamphetamine, over 27.7 gross kilograms of

heroin, over 5 gross kilograms of cocaine, over 5.2 gross kilograms of counterfeit oxycodone

pills suspected to contain fentanyl, a small amount of crack cocaine, a small amount of various

pharmaceutical controlled substances, and over $300,000 of suspected drug proceeds.

Investigators have seized drugs, drug proceeds, and firearms, and have observed drug ledgers,

packing materials, scales, and other items indicative of drug distribution, all pursuant to search

warrants and consent searches residences and vehicles used by members of the DTO.

7.       Over the course of the investigation,

**Page 3 – Affidavit of Bradley A. Dixon**                    **USAO Version Rev. April 2018**

8.      Until recently, F. Angel was only known to Investigators as "Padrino."

.

9.      Based on the investigation to-date,

F. Angel and R. Angel communicate with customers who purchase multi-ounce quantities of narcotics for redistribution to user level customers and sub-distributors.  F. Angel and R. Angel communicate with distributors of narcotics in order to obtain supplies of bulk quantities of narcotics for distribution to narcotics sub-distributors and customers.  F. Angel and R. Angel also communicate with individuals who store drugs and proceeds, transport drugs and proceeds, re-package drugs for distribution, and conduct drug transactions with F. Angel's and R. Angel's customers and suppliers.  Investigators refer to these co-conspirators as "runners."

10.      Based on the investigation to-date,

F. Angel and R. Angel have multiple sources of narcotics who supply heroin, methamphetamine, cocaine, and counterfeit oxycodone

pills.  F. Angel and R. Angel communicate with their suppliers and arrange for their respective runners to meet with their suppliers' runners and exchange drugs for drug proceeds.  As of the writing of this affidavit, F. Angel (under the moniker "Padrino"), R. Angel, and several others have been indicted for violations of the Target Offenses.

11.     As detailed herein, the investigation has identified one such supplier as ▓▓▓ one of ▓▓▓ nterstate drug couriers as Angel De Jesus Cervantes ("Cervantes"), and one of ▓▓▓ runners as Jairo Hassiel Ibarra Hernandez ("Ibarra").  As detailed herein, this Affidavit is written in request for the Court to issue federal arrest warrants only for ▓▓▓ and Ibarra, as others involved in violations of the Target Offenses with ▓▓▓ and Ibarra have already been indicted.

12.     The investigation has identified Ibarra's residence as being located at 11412 NE 49th St Apt J-15, Vancouver, Washington 98682 (hereinafter "Ibarra's Residence").  The investigation has identified Ibarra's vehicle as a green 2003 Nissan Sentra bearing Oregon license plate 563GDP and Vehicle Identification Number (VIN) 3N1CB51D03L788309 (hereinafter "Ibarra's Vehicle").

13.     Until recently, ▓▓▓ was known only as "UM-6135," a reference to an unknown male and the last four digits of the first cellphone number identified in the investigation to be used by this person (971-713-6135, or Target Cellphone 13). ▓▓▓ UM-6135 has been identified as ▓▓▓

14.     Based on my training and experience and consultations with other Investigators, I know drug traffickers rarely use explicit language, but instead use vague language, coded jargon, and/or slang when referencing drug distribution via voice call or cell phone messaging

application.  Based on the investigation to-date, ████████████████████ I know

that DTO members use coded jargon and vague language to discuss drug distribution.  For

example, suspected DTO members have referred to drugs as "animals" and "horses," specifically

two types of horses – "Fresians" and "Spaniards" – to refer to heroin and cocaine.  They have

also referred to packages of drugs in general as "gifts" or "presents." They have also referred to

drugs as "food," often referring to drugs as specific types of food (i.e. "pizza") or events/items

related to food (i.e. "lunch").  Additionally, they have referred to drugs as "dark," "black,"

"brown," or "chiva" (common slang terms for heroin); "coke," "coca," "paloma," and "dove"

(common slang terms for cocaine); "water," "crystal," and "white" (common slang terms for

methamphetamine).  Furthermore, they have referred to drug proceeds as "money," "paper," and

"receipts" (common slang terms for drug proceeds).

      15. ████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

      16. ██████████████████████████

████████████████████████████████

████████████████████████████████

*Wiretaps and Surveillance Identifies Lopez's Runner*

17.    On March 30, 2021 ███████████████████████

███████████████████████████████████████████████

18.    ███████████████████████████████████████

███████████████████████████████████████████████████

19.    ███████████████████████████████████████████

███████████████████████████████████████████████████

20.    ███████████████████████████████

███████████████████████████████████████████████████

21. 

22.

23.

24.

25.

26.     Around the time of the 1:52 p.m. communication, Investigators had established covert physical surveillance in the area of the strip mall containing the Beverage Tobacco Zone and observed the strip mall to also contain a laundromat.  Investigators observed the Ibarra's Vehicle (a dark green Nissan Sentra bearing Oregon license plate 563GDP) parked in front of the laundromat.  Investigators then observed a Hispanic male – later identified to be Ibarra – in neon green construction clothing emerge from the Ibarra's Vehicle and appear to wave at a white Chevrolet Cobalt that was approaching in the parking lot.  This same Chevrolet Cobalt has been observed during other suspected drug transactions during the investigation, which transactions took place within the District of Oregon.

27.     Investigators observed Ibarra appear to access the trunk of the Ibarra's Vehicle, then the back seat.  Investigators observed Ibarra then transfer a tan-colored bag from the Ibarra's Vehicle to the passenger seat of the white Chevrolet Cobalt while the driver of the Chevrolet Cobalt was standing outside the driver's door of the vehicle.  Investigators then observed the driver of the Chevrolet Cobalt and depart.

28.     After the transaction, Investigators followed Ibarra, driving the Ibarra's Vehicle, into the neighboring Oak Creek Apartments complex that contains the Ibarra's Residence.

29.     Based on my training, experience, and consultations with other Investigators, I know quick, parking lot transactions are common methods used by drug traffickers to distribute drugs and collect drug proceeds.  Based on this, I believe Ibarra removed a tan bag containing an amount of drugs (i.e. a "michelada,"

**Page 9 – Affidavit of Bradley A. Dixon**                    **USAO Version Rev. April 2018**

slang for a half-kilogram) from the Ibarra's Vehicle, and placed it into the Chevrolet Cobalt and collected $31,400.00 of drug proceeds from the Chevrolet Cobalt as well.

30.     Later during surveillance that day, Investigators observed the Ibarra's Vehicle to be parked in front of Building J in front of a door leading to four apartments, including Apartment J-15 (Ibarra's Residence).  At this time, Investigators observed the Ibarra's Vehicle to be unoccupied.  Investigators maintained surveillance of the Ibarra's Vehicle and observed Ibarra to be accessing the Ibarra's Vehicle in front of the Ibarra's Residence before then departing the area.

31.



*Sends Drug Courier with Heroin and Cocaine*
*Intended for F. Angel's Cell of the DTO*

32.

33.                                                  Investigators established surveillance on Interstate-5 and, on April 2, 2021, stopped a white Chevrolet Cruze suspected to be transporting drugs.  The driver, identified as Cervantes, consented to a search of the vehicle and a narcotics detection canine alerted to the odor of narcotics emanating from the vehicle.

Investigators seized the vehicle, towed it to a secure location, and later searched it pursuant to a

state search warrant.  Pursuant to this search,  only a small amount of cocaine was seized.

34.     Investigators later contacted Cervantes, who arranged for a tow truck to retrieve

the vehicle.  After the tow truck retrieved the vehicle, ████████████████████████████



35.     █████████████████████████████ ████████████and

because Investigators found only a small amount of cocaine during the initial search,

Investigators suspected there was still a large quantity of drugs inside the Chevrolet Cruze.

Investigators then immediately re-located the Chevrolet Cruze, seized the vehicle again, and

again applied for and obtained a state search warrant to search the vehicle.

36.     Pursuant to the second search warrant, Investigators found and seized three

packages (approximately three kilograms) of cocaine and three packages (approximately three

kilograms) of heroin (i.e. "Friesians" and "Spaniards").  Each package was layered with plastic

wrap, transmission oil, and black pepper – methods commonly used to conceal drugs and avoid

narcotics canine detection.  The packages of cocaine and heroin were concealed deep inside the

dashboard in a natural void of the vehicle that had to be dismantled to find the drugs, which was

why the drugs were not found during the initial search warrant.

37.     I have since reviewed the call-detail (toll) records of ██████ phone used on April

2, 2021 ██████████████  I noted that on April 2, 2021, ██████ phone engaged in 91

individual communications (voice calls and text messages).  Of these communications, 77

(nearly 85%) of these communications were either with Cervantes (driver of the Chevrolet Cruze and known drug courier), F. Angel (known drug broker and distributor currently indicted under aka "Padrino"), and someone using 971-369-3342 ("SP-3342").  The remaining communications (only 15%) were with California-based phone numbers.

      38.     Based on my training, experience, and consultations with other Investigators, I know drug trafficking and distribution is often arranged through a flurry of communications with parties involved in the trafficking and distribution.  Based on this, and the fact that ▇▇▇▇ was primarily in contact with Cervantes, F. Angel, and SP-3342 while Cervantes was transporting drugs into the District of Oregon, I believe communications with Cervantes, F. Angel, and SP-3342 were in furtherance of ▇▇▇▇ sending drugs to his drug associates in the Portland, Oregon metro area.

      39.     I have since reviewed subscriber records for SP-3342 pursuant to a DEA administrative subpoena, and learned that Ibarra is the subscriber of SP-3342.  I therefore suspect Ibarra is associated with ▇▇▇▇ and his drug trafficking scheme and was one of the intended recipients of the heroin and cocaine seized from Cervantes' vehicle.

      40.     ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

41. 

42.

43.



44.

45.    On August 3, 2021,

46.



47.

48.

49.     On August 6, 2021, Investigators applied for and obtained a geolocation search warrant authorizing Investigators to collect and monitor the geolocation of ████████that was in contact with████SP-1333 during a suspected transaction on August 3, 2021. Investigators began monitoring the geolocation of ████████later that day.  I have reviewed and monitored the geolocation data and have observed ████████travel throughout California, Arizona, New Mexico, Texas, and, Oregon.  Furthermore, ████████had also been periodically located in the area of ████residence.  Based on this and the investigation to-date identifying ████████████, I believed this travel was consistent with the movements of an interstate drug courier.

50.     On August 20, 2021, Investigators noted that ████████began travelling north from the Los Angeles, California area, then north along Interstate-5 and into Oregon. Based on the investigation to-date, Investigators suspected ████was travelling northbound with drugs.  Thus, Investigators deployed to conduct surveillance in an attempt to locate and stop ████
████

51.     Investigators established surveillance along Interstate-5 and continued to monitor the geolocation of ████████ Investigators observed a vehicle travelling northbound along Interstate-5 around the time geolocation data indicated the ████████was in the same area. Investigators initiated a follow of the vehicle, which continued to travel in a pattern consistent with ████████ During the follow, Investigators were able to confirm ████s an occupant of the vehicle.

52.     Investigators then chose to initiate a vehicle stop of ████vehicle.  During the stop, ████████████ach provided consent to search the vehicle.  A narcotics

**Page 16 – Affidavit of Bradley A. Dixon**          **USAO Version Rev. April 2018**

detection canine officer then directed his canine to conduct a search and sniff of the vehicle, and the canine alerted to the odor of narcotics emanating from the vehicle.  Investigators then seized the vehicle and had it towed to a secured parking lot.

53.     Investigators subsequently obtained a federal search warrant to search the ██████ vehicle.  Pursuant to the search, Investigators found two laundry detergent boxes to contain packages of heroin, weighing approximately 1,419.4 gross grams (with packaging).  The packages of heroin were masked in plastic wrap, motor oil, and black pepper, which is a common method used in an effort to avoid law enforcement detection.  Investigators noted the packaging was consistent with the drugs previously seized from drug courier Cervantes in April 2021, in that they both were wrapped in plastic wrap, motor oil and black pepper.

54.     In September 2021, ██████ was indicted by a federal grand jury for drug-related charges and a federal arrest warrant fo ██████ was subsequently issued.  ██████ has since been arrested pursuant to his/her warrant.

55.     Investigators have since met with ████████████████████████

56.     ████████████████████████



57.

58.

59.

60.



61.

62.

63.

64.

65. I have queried DMV

records for the green Nissan Sentra (Ibarra's Vehicle) previously observed to be driven by Ibarra

during a drug and drug proceeds transaction on March 30, 2021. I learned that Ibarra is currently

listed as one of two registered owners of Ibarra's Vehicle. Furthermore, I have queried

commercial database records through Thomson Reuters Clear and learned that Ibarra's

Residence is listed as Ibarra's residence based on credit bureau records,

66.

67.    On October 5, 2021, Investigators conducted physical surveillance in the area of

Ibarra's Residence in an attempt to confirm that Ibarra still resides there. Investigators followed

the description                    of Ibarra's Residence and observed the back porch of Ibarra's

residence to have a wooden chair, and appeared to be the only residence with a chair on the back

porch,                                        While there, Investigators also observed Ibarra

walk from the area of Ibarra's Residence and enter Ibarra's Vehicle, thus confirming that Ibarra

still resides at Ibarra's Residence and uses Ibarra's Vehicle.

68.     Based on my training, experience, and consultations with other Investigators, I know that drug traffickers involved in large-scale distribution do not suddenly stop drug distribution unless arrested by law enforcement.  Specifically, during this investigation, and as summarized in the Background of the Investigation section above, Investigators have seized massive quantities of drugs associated with this specific DTO, and have arrested over 30 members of the DTO.  Some of these drugs are directly attributable to ███ and Ibarra.  Yet, the DTO has still continued to operate by obtaining new drugs, new drug stash locations, new vehicles, and new drug runners.  Based on this and the investigation to-date indicating that ███ ██Ibarra have been involved in a long-term conspiracy to distribute narcotics, Investigators believed that Ibarra and ███would continue their drug distribution scheme until stopped by law enforcement.

### Search Warrant on Ibarra's Residence and Ibarra's Vehicle

69.     On October 7, 2021, I applied for and obtained federal search and seizure warrants authorizing Investigators to search Ibarra's Residence and Ibarra's Vehicle and seize evidence of the Target Offenses.  On October 12, 2021, Investigators conducted these search warrants.

70.     Investigators established surveillance in the area of Ibarra's Residence and observed Ibarra's Vehicle to be parked nearby.  I then knocked on the door of Ibarra's Residence while posing as a construction worker.  While there, Ibarra answered the door and seemed to be the only occupant.  I then left the residence briefly.

71.     Shortly thereafter, Investigators knocked on the front door of Ibarra's Residence. At this time, all Investigators were wearing police gear labeled "Police."  Investigators knocked

**Page 21 – Affidavit of Bradley A. Dixon**          **USAO Version Rev. April 2018**

on the door and Ibarra immediately answered.  TFO Chris Haynes, who speaks Spanish,

identified Investigators as police with a search warrant and requested Ibarra step outside.  Ibarra

did so and was placed in handcuffs without incident.  Investigators then conducted a safety

sweep of Ibarra's residence and did not locate any other people or immediate threats.

72.    Ibarra was then placed on a chair in the living/dining area.  Investigators then

conducted a thorough search of Ibarra's Residence and Ibarra's Vehicle pursuant to the warrants

while one Investigator remained with Ibarra and in the sight of other Investigators.

73.    During the search, Investigators located a black bag near the kitchen table.  The

black bag was found to contain approximately 219 gross grams (gross grams = drugs with

packaging) of methamphetamine, approximately 184 gross grams of heroin, and approximately

173 gross grams of counterfeit oxycodone pills suspected to contain fentanyl.  The drugs were

broken down into smaller packages for distribution.  The bag also contained drug packaging and

digitical scales.  Also during the search, Investigators found detailed drug ledgers in Ibarra's

kitchen and living room.  The drugs, scales, and ledgers are depicted below:

**Page 22 – Affidavit of Bradley A. Dixon**            **USAO Version Rev. April 2018**



*Black Bag Containing Drugs*



*Packages of Methamphetamine and Heroin*



*Packages of Counterfeit Oxycodone Pills and Heroin*



*Digital Scale in Black Bag*



*Ledger Regarding 10,000 "Azules [Blues]" Broken into 10 "Bolsas [Bags]" of 1,000 Pills. "Blues" is slang for blue Counterfeit Oxycodone pills.*

74.     The methamphetamine and heroin were later field tested and tested presumptive positive for methamphetamine and heroin.  For officer safety, the pills were not field tested.  All drugs will be sent to a DEA lab for further testing.  Thus far in the investigation, all counterfeit oxycodone pills have been sent to a lab for testing, and portions of these pills have been tested by a DEA chemist.  All tested pills have been found to contain detectable amounts of fentanyl.

Thus, Investigators suspected the counterfeit oxycodone pills seized from Ibarra's Residence will also contain fentanyl.



75.     During the search warrant, Following the search warrant, Ibarra was informed he was under arrest for violations of the Target Offenses, and Ibarra was transported to the DEA Portland District Office for processing.

76.

77.     Based on the investigation to-date, I believe members of the DTO are involved in a large-scale conspiracy to distribute controlled substances from Mexico into the United States for further distribution, including within the District of Oregon.  I believe members of the DTO use vehicles, residences, and communications facilities (cellphones) to facilitate the Target

Offenses.  During this investigation, Investigators have conducted numerous search warrants and consent searches of residences and vehicles associated with members of the DTO.  Pursuant to these searches, Investigators have seized drugs, drug proceeds, firearms, and cellphones used by members of the DTO in furtherance of the Target Offenses.  Furthermore, during these searches, Investigators have found drug ledgers, packing materials, scales, and other items indicative of drug distribution.

78.    Based on this, my training and experience, consultations with other Investigators, and the facts and events detailed herein, I believe ▓▓▓▓▓ Ibarra are two such DTO members, and tha ▓▓▓ Ibarra, and other indicted and un-indicted co-conspirators have been involved in a long-term conspiracy to commit the Target Offenses, including within the District of Oregon. F. Angel (under the moniker "Padrino"), R. Angel, and several others have already been indicted for violations of the Target Offenses.

79.    Based on the foregoing, I request the Court issue federal arrest warrants only for ▓▓▓▓▓ Ibarra for violations of the Target Offenses.

**Conclusion**

80.    Based on the foregoing, I believe Ibarra ▓▓▓▓ and other indicted and un-indicted co-conspirators have violated the Target Offenses.  I therefore request the Court issue arrest warrants for Ibarra and ▓▓▓ for these violations.

81.    Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Paul Maloney, and AUSA Maloney advised me that in his opinion the affidavit and complaint are

**Page 27 – Affidavit of Bradley A. Dixon**                **USAO Version Rev. April 2018**

legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

### **Request for Sealing**

82.   It is respectfully requested that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested criminal complaint and arrest warrant.  I believe that sealing these documents is necessary because the information to be seized is relevant to an ongoing investigation, and any disclosure of the information at this time is likely to seriously jeopardize the ongoing investigation. Premature disclosure of the affidavit, the criminal complaint, and the arrest warrant may adversely affect the integrity of the investigation.


*/s/ Sworn to by telephone*
*In accordance with Fed. R. Crim. P. 4.1*
Bradley A. Dixon
DEA Special Agent


Sworn to by telephone at __8:18__ ~~a.m.~~/p.m. this __12th__ day of October 2021 in accordance with Fed. R. Crim. P. 4.1.

_____
HONORABLE YOULEE YIM YOU
United States Magistrate Judge


**Page 28 – Affidavit of Bradley A. Dixon**          **USAO Version Rev. April 2018**